UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

KYLE JOSEPH LONGACRE,

         Plaintiff,                    Case No. 2:12-cv-88

v.                                              Honorable Gordon J. Quist

RICK SNYDER, et al.,

         Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Rick Snyder and Daniel H. Heyns. The Court will serve the complaint against Defendants Unknown Curley, J. Larson, Unknown Haataja and Unknown Brendal.

**Factual Allegations**

Plaintiff Kyle Joseph Longacre, a state prisoner currently incarcerated at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Governor Rick Snyder, MDOC Director Daniel H. Heyns, Warden Unknown Curley, Acting Warden J. Larson, Sergeant Unknown Haataja, and Sergeant Unknown Brendal. Plaintiff alleges that on January 5, 2011, while he was suffering from duress from being denied mental health treatment, Plaintiff assaulted a corrections officer in an attempt to obtain said treatment. Plaintiff states that the corrections officer then assaulted Plaintiff in the same manner. Plaintiff was then placed in handcuffs and shackles and was forced to walk roughly 600 yards with his head between his ankles, causing him to suffer "extreme anguish."

Plaintiff was placed in a new unit, where corrections staff informed him that he was their bitch. On one occasion while being paraded around the facility, Plaintiff was "smacked" in the mouth and was called the "faggot who assaulted Coron." In addition, the escorting officers stopped to ask each prison official if they wanted to "bitch slap" Plaintiff. For two weeks, Plaintiff was housed in a cell off camera with only his underwear, prison jumpsuit, and coat. Plaintiff states that the air conditioning was blowing the whole time and that he was not allowed blankets or a mattress. Plaintiff alleges that he was denied food until he had another inmate file a grievance on his behalf. After that, Plaintiff began receiving his trays, but they were dumped upside down on the floor so that Plaintiff was forced to eat off the floor. After two weeks, Plaintiff was transferred to another wing in the same unit.

On March 21, 2011, Plaintiff was arraigned on criminal assault charges stemming from his January 5, 2011, assault of a corrections officer. Later that evening, Corrections Officer Holma came to Plaintiff's cell and attempted to fingerprint him. However, Plaintiff refused, stating

that because he had already been arraigned, it was too late to obtain fingerprints. Holma then informed Defendant Brendal of Plaintiff's refusal, and Defendant Brendal came to Plaintiff's cell and ordered him to have his fingerprints taken. Plaintiff asked if Defendant Brendal was going to violate his due process rights and Defendant Brendal replied that Plaintiff had no rights. Defendant Brendal told Plaintiff that he was going to gas Plaintiff and left the area to obtain a can of gas. When Defendant Brendal returned, he pretended to spray the can through the slot, causing Plaintiff to dive to the ground. Defendant Brendal laughed and called Plaintiff a "pussy."

Shortly thereafter, Corrections Officer Goodreau approached Plaintiff's cell and tried to convince him to exit the cell willingly. Plaintiff refused and observed Corrections Officer Skytta in emergency response gear closing inmate window flaps. Defendant Haataja arrived and explained that he had authorization from Defendants Curley and Larson to use chemical agents on Plaintiff. Defendant Haataja ordered Plaintiff to back up to the slot and allow handcuffs to be applied. Plaintiff did not refuse the order, but asked to see the camera. Defendant Haataja then stated that he was giving a direct order for Plaintiff to back up to the slot and allow handcuffs to be applied. Plaintiff again asked to see the camera, at which point Defendant Haataja administered the chemical agent to Plaintiff's body, striking him in the face, buttocks, and genital area, which caused Plaintiff to gag and experience a burning sensation all over his body and in his lungs.

Plaintiff states that he struggled to breath for approximately 200 seconds before Corrections Officer Skytta persuaded Defendants Haataja and Brendal to allow for a strip search. Skytta then conducted the strip search and Plaintiff was placed in handcuffs. Plaintiff was then escorted to Health Care, where he waited for four to five minutes for a nurse to arrive. Plaintiff's vital signs were checked and he was transferred from "3 block" to the "100 building," where a Michigan State Police officer asked Plaintiff for his fingerprints. Plaintiff refused and Defendant

Haataja ordered Plaintiff to give up his fingerprints, advancing on Plaintiff in a threatening manner. The Michigan State Police officer then told Plaintiff that he did not need to give up his fingerprints, but that he must turn around and state his refusal to the camera. Plaintiff turned and saw the camera for the first time. Plaintiff then stated that he did not wish to be fingerprinted and was doing so only because he feared being assaulted by prison staff if he refused.

Plaintiff was subsequently taken back to his cell, which was uncleaned and unventilated, causing Plaintiff to suffer breathing difficulties and burning of his skin. Plaintiff asserts that he received second-degree burns to his ankles. Throughout the next several months, Plaintiff was seen by Health Care for difficulty seeing, burns to his ankles, chest pain, lower back and body pain, and nerve pain. Plaintiff filed step I grievances regarding the use of chemicals, but they were rejected by Defendant Larson for failure to attempt to resolve the issue with staff prior to filing the grievances. Plaintiff's step II and III appeals were also rejected.

Plaintiff claims that Defendants' treatment of him violated his constitutional rights. Plaintiff seeks monetary damages.

## Discussion

I.  <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains

"enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or

otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Snyder and Heyns were personally involved in the activity which forms the basis of his claim. The only role that Defendants Snyder and Heyns had in this action involved the denial of administrative grievances or the failure to act. Defendants Snyder and Heyns cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Accordingly, the Court concludes that Plaintiff's claims against Defendants Snyder and Heyns are properly dismissed for lack of personal involvement.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Snyder and Heyns will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Curley, Larson, Haataja, and Brendal.

An Order consistent with this Opinion will be entered.


Dated: May 29, 2012                                /s/ Gordon J. Quist
                                                   GORDON J. QUIST
                                                   UNITED STATES DISTRICT JUDGE