UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KYLE JOSEPH LONGACRE,

        Plaintiff,        Case No. 2:12-cv-88

v.        Honorable Gordon J. Quist

RICK SNYDER, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. On May 29, 2012, this Court ordered service of Plaintiff's complaint on Defendants Unknown Curley, J. Larson, Unknown Haataja and Unknown Brendal. On August 13, 2012, August 20, 2012, and August 23, 2012, Defendants Haataja, Curley, Brendal and Larson filed motions for summary judgment (docket #13, #16 and #21) on the ground that Plaintiff failed to exhaust his available administrative remedies against them. Plaintiff filed a response (docket #32) on or about October 30, 2012. Defendants filed a reply (docket #34) to Plaintiff's response on November 13, 2012, and Plaintiff filed a "surreply" (docket #38) on December 7, 2012. Upon review, I recommend that Defendants' motions for summary judgment based on Plaintiff's failure to exhaust his available administrative remedies be granted.

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for

determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable

jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Plaintiff is presently incarcerated at the Baraga Maximum Correctional Facility (AMF). In his *pro se* complaint, he sues Defendants Governor Rick Snyder, MDOC Director Daniel H. Heyns, Warden Unknown Curley, Acting Warden J. Larson, Sergeant Unknown Haataja, and Sergeant Unknown Brendal. On May 29, 2012, the court dismissed Plaintiff's claims against Defendants Snyder and Heyns, and ordered service on Defendants Curley, Larson, Haataja, and Brendal.

In his complaint, Plaintiff alleges that on January 5, 2011, while he was suffering from duress from being denied mental health treatment, Plaintiff assaulted a corrections officer in an attempt to obtain said treatment. Plaintiff states that the corrections officer then assaulted Plaintiff. Plaintiff was then placed in handcuffs and shackles and was forced to walk roughly 600 yards with his head between his ankles, causing him to suffer "extreme anguish."

Plaintiff was placed in a new unit, where corrections staff informed him that he was their bitch. On one occasion while being paraded around the facility, Plaintiff was "smacked" in the mouth and was called the "faggot who assaulted Coron." In addition, the escorting officers stopped to ask each prison official if they wanted to "bitch slap" Plaintiff. For two weeks, Plaintiff was housed in a cell off camera with only his underwear, prison jumpsuit, and coat. Plaintiff states that the air conditioning was blowing the whole time and that he was not allowed blankets or a mattress. Plaintiff alleges that he was denied food until he had another inmate file a grievance on his behalf.

After that, Plaintiff began receiving his trays, but they were dumped upside down on the floor so that Plaintiff was forced to eat off the floor. After two weeks, Plaintiff was transferred to another wing in the same unit.

On March 21, 2011, Plaintiff was arraigned on criminal assault charges stemming from his January 5, 2011, assault of a corrections officer. Later that evening, Corrections Officer Holma came to Plaintiff's cell and attempted to fingerprint him. However, Plaintiff refused, stating that because he had already been arraigned, it was too late to obtain fingerprints. Holma then informed Defendant Brendal of Plaintiff's refusal, and Defendant Brendal came to Plaintiff's cell and ordered him to have his fingerprints taken. Plaintiff asked if Defendant Brendal was going to violate his due process rights and Defendant Brendal replied that Plaintiff had no rights. Defendant Brendal told Plaintiff that he was going to gas Plaintiff and left the area to obtain a can of gas. When Defendant Brendal returned, he pretended to spray the can through the slot, causing Plaintiff to dive to the ground. Defendant Brendal laughed and called Plaintiff a "pussy."

Shortly thereafter, Corrections Officer Goodreau approached Plaintiff's cell and tried to convince him to exit the cell willingly. Plaintiff refused and observed Corrections Officer Skytta in emergency response gear closing the inmate window flaps. Defendant Haataja arrived and explained that he had authorization from Defendants Curley and Larson to use chemical agents on Plaintiff. Defendant Haataja ordered Plaintiff to back up to the slot and allow handcuffs to be applied. Plaintiff did not refuse the order, but asked to see the camera. Defendant Haataja then stated that he was giving a direct order for Plaintiff to back up to the slot and allow handcuffs to be applied. Plaintiff again asked to see the camera, at which point Defendant Haataja administered the chemical agent to Plaintiff's body, striking him in the face, buttocks, and genital area, which caused Plaintiff to gag and experience a burning sensation all over his body and in his lungs.

4

Plaintiff states that he struggled to breath for approximately 200 seconds before Corrections Officer Skytta persuaded Defendants Haataja and Brendal to allow for a strip search. Skytta then conducted the strip search and Plaintiff was placed in handcuffs. Plaintiff was then escorted to Health Care, where he waited for four to five minutes for a nurse to arrive. Plaintiff's vital signs were checked and he was transferred from "3 block" to the "100 building," where a Michigan State Police officer asked Plaintiff for his fingerprints. Plaintiff refused and Defendant Haataja ordered Plaintiff to give up his fingerprints, advancing on Plaintiff in a threatening manner. The Michigan State Police officer then told Plaintiff that he did not need to give up his fingerprints, but that he must turn around and state his refusal to the camera. Plaintiff turned and saw the camera for the first time. Plaintiff then stated that he did not wish to be fingerprinted and was doing so only because he feared being assaulted by prison staff if he refused.

Plaintiff was subsequently taken back to his cell, which was uncleaned and unventilated, causing Plaintiff to suffer breathing difficulties and burning of his skin. Plaintiff asserts that he received second-degree burns to his ankles. Throughout the next several months, Plaintiff was seen by Health Care for difficulty seeing, burns to his ankles, chest pain, lower back and body pain, and nerve pain. Plaintiff filed step I grievances regarding the use of chemicals, but they were rejected by Defendant Larson for failure to attempt to resolve the issue with staff prior to filing the grievances. Plaintiff's step II and III appeals were also rejected. Plaintiff claims that Defendants' refusal to provide him with mental health treatment, as well as the use of chemical agents, violated his constitutional rights and seeks monetary damages.

Defendants claim that they are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies. Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to

prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ P. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ GG. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ X. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id* at ¶ HH. Finally, the court notes that a plaintiff must pursue all levels of the administrative procedure before filing an action in federal court. *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("While we recognize that plaintiff made some attempt to go through the prison's grievance procedures, we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed.").

Defendants assert that Plaintiff failed to complete the grievance process as required by MDOC policy regarding any issue raised in his complaint. Defendants offer a copy of the step III grievance report for Plaintiff, which shows that Plaintiff filed thirteen step III grievances while incarcerated at AMF. (Defendants' Exhibit B, docket #14-3.) Of the thirteen grievances, five of Plaintiff's step III appeals were both received and completed after Plaintiff had already filed the instant complaint on February 24, 2012. These include AMF-12-02-0667-12e3, which was received

on April 27, 2012, AMF-12-02-0413-12b1 and AMF-12-01-0220-12c1, which were received on April 6, 2012, AMF-12-02-0412-09a and AMF-12-02-0452-12f3, which were received on March 19, 2012. (Defendants' Exhibit B, docket #14-3.) As noted above, because Plaintiff's failed to complete the grievance process with regard to these five grievances prior to filing the instant complaint, they do not exhaust Plaintiff's administrative remedies for purposes of this lawsuit.

Defendants state that six of the remaining grievances that Plaintiff filed step III appeals on do not relate to the allegations in Plaintiff's complaint. Specifically, in AMF-11-03-1142-12d2, Plaintiff complained that health care staff at AMF failed to provide him with appropriate medical treatment. (Defendants' Exhibit E, docket #14-6.) In AMF-11-03-1253-28i, Plaintiff complained that Defendant Brendal tried to trick him into providing his fingerprints. (Defendants' Exhibit F, docket #14-7.) In AMF-11-02-0810-12e4, Plaintiff asserted that health care staff failed to provide him with lotion, shampoo, and deodorant. (Defendants' Exhibit H, docket #14-9.) In AMF-11-02-0710-28e, Plaintiff stated that "Psych Francies" failed to provide him with proper treatment for his mental health issues. (Defendants' Exhibit I, docket #14-10.) In AMF-11-02-0711-27a, Plaintiff contended that the Parole Board had improperly denied him parole. (Defendants' Exhibit J, docket #14-11.) Finally, in AMF-10-09-03958-01b, Plaintiff complained that accounting staff at AMF had taken too much money out of his institutional account. (Defendants' Exhibit K, docket #14-12.) Because these grievances do not relate to the allegations in Plaintiff's complaint, they do not serve to his exhaust his administrative remedies with regard to the instant action.

The remaining two grievances for which Plaintiff filed step III appeals while at AMF are AMF-11-03-1255-28i and AMF-11-03-1254-28i. (Defendants' Exhibits C and G, docket #14-4 and #14-8.) In these grievances, Plaintiff complained that Defendant Haataja unlawfully used chemical agents against him. However, both of these grievances were rejected at each level because

8

Plaintiff failed to make any attempt to resolve the issue with the staff member involved, specifically Defendant Haataja, prior to filing his grievance as required by MDOC Policy Directive 03.02.130, ¶ R. In the rejection letters, Plaintiff was specifically instructed that he should discuss the matter with Defendant Haataja and that if the matter was not resolved, he could resubmit the issue on an new step I form. (Defendants' Exhibits C and G, docket #14-4, p. 6 of 6, and docket #14-8, p. 6 of 6.) It does not appear as if Plaintiff made any attempt to comply with these instructions.

In response to Defendants' motions, Plaintiff states that pursuant to MDOC Policy Directive 03.02.130, ¶ G(2), he was not required to attempt to resolve the issue with Defendant Haataja prior to filing because the asserted misconduct constituted a crime and thus fell within the jurisdiction of the Internal Affairs Division.

Defendants reply to this assertion by noting that MCL § 800.41(1) requires a corrections officer to "use all suitable means to defend [himself], to enforce discipline, to secure offenders, and to prevent any escape" in the event "a prisoner assaults or batters a corrections officer or any other person." In addition, Defendants note that the use of chemical agents is authorized by MDOC Policy Directive 03.03.100. In support of this assertion, Defendants offer the affidavit of Steph Raymond, who attests that he is employed as the Grievance Coordinator at AMF and that he rejected Plaintiff's grievance regarding the use of chemical agents because Plaintiff failed to discuss the issue with staff prior to filing the grievance. (Defendants' Exhibit A, docket #34-2, p. 2-3 of 8, ¶¶ 2-3.) Raymond further attests that Policy Directive 03.03.100 authorizes staff to use chemical agents in carrying out their duties. In addition, Raymond states that Policy Directive 01.01.140, ¶ D, provides that Internal Affairs jurisdictions exists regarding allegations of staff sexual misconduct, staff overfamiliarity, conduct which constitutes a felony or misdemeanor, an infraction of a work rule which undermines the integrity of the MDOC, and conduct which would be grounds for discharge.

9

(Defendants' Exhibit A, docket #34-2, p. 2 of 8, ¶¶ 5-7; and Attachment #1, Policy Directive 01.01.140.) Raymond states that because the use of chemical agents is authorized by state law and MDOC policy, it is not within the jurisdiction of the Internal Affairs Division.

As noted above, in AMF-11-03-1255-28i and AMF-11-03-1254-28i, Plaintiff was given the opportunity to comply with MDOC policy and discuss the issues with Defendant Haataja, after which he was free to file step I grievances reasserting the issues. Plaintiff instead chose to appeal the step I rejections for AMF-11-03-1255-28i and AMF-11-03-1254-28i. Plaintiff's appeals were rejected at each level. Therefore, the undersigned concludes that Plaintiff has not exhausted his administrative remedies with regard to the allegations asserted in his complaint.

For the foregoing reasons, I recommend that Defendants' motions for summary judgment (docket #13, #16 and #21) be granted and this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich.

LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   January 9, 2013